UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM S. JOHNSON : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. O5-cv-5555 |
| EDWIN L. PHELPS, and : | |
| SAM S. STEVENS : | |

**SURRICK, J.**                                                                    **MARCH 30, 2007**

### MEMORANDUM & ORDER

Presently before the Court is Defendants' Motion To Dismiss Against Plaintiff William S. Johnson (Doc. No. 2). For the following reasons, the Motion will be denied.

**I.   BACKGROUND**

Plaintiff resides in Newtown Square, Pennsylvania. (Doc. No. 1 at Ex. 2 ¶1.) From 1992 until 2000, Plaintiff worked at IPS Associates, Inc. ("IPS" or "the Company"), a consulting company incorporated and based in California. (*Id.* ¶ 5.) In 2000, a company named Epic Edge acquired a majority ownership interest in IPS. (*Id.* ¶ 5.) At the time of Epic Edge's acquisition, Plaintiff was serving as IPS's Chief Financial Officer ("CFO"). (*Id.* ¶ 6.) Shortly after the acquisition, Plaintiff entered into negotiations with Epic Edge for an employment agreement that provided for, among other things, a severance package consisting of one year's salary and bonus in the event Plaintiff was fired. (*Id.*) In January 2001, before Plaintiff's negotiations with Epic Edge were complete, IPS's founder and then-Chief Executive Officer ("CEO"), Bill Kern, repurchased IPS from Epic Edge. (*Id.*)

Kern's repurchase was financed largely by Red & Blue, Inc., a company owned and controlled by Defendant Edwin Phelps. (*Id.*; Pl. Decl., Doc. No. 5 at Ex. A ¶ 3.) Phelps, the sole shareholder of Red & Blue and a resident of Virginia, obtained a significant ownership interest

in IPS through this financing agreement. (Doc. No. 1 at Ex. B ¶ 6.) Under the terms of the agreement, Kern along with IPS's other principals were required to meet certain sales goals and revenue objectives by the end of 2001. (*Id.* ¶ 10.) In the event they failed to do so, majority ownership and control of IPS would shift to Phelps. (*Id.*)

Shortly after Kern and Phelps repurchased IPS, Kern approached Plaintiff about returning to work for IPS as their CFO. (*Id.* ¶ 7.) Plaintiff was concerned about the direction of the Company and sought assurances from Kern that he would receive the same one-year severance package that he had negotiated with Epic Edge. (*Id.* ¶ 8.) Kern assured Plaintiff that IPS would honor the one-year severance agreement, and Plaintiff accepted IPS's offer. (*Id.* ¶ 8.) From that point forward, Plaintiff took advantage of IPS's new "virtual office" concept, setting up an office at his home in Pennsylvania. (Doc. No. 5 at Ex. A ¶¶ 6-7.) IPS provided Plaintiff with a stipend to set up his home-office, paid for office supplies and paid his office phone bills and internet charges. (*Id.*) Plaintiff worked approximately sixty percent of the time at his home-office, and forty percent of the time at IPS's California office. (*Id.* ¶ 13.) When home, Plaintiff communicated daily with IPS officials and representatives, including Defendants, by fax and phone. (*Id.* ¶¶ 10-16.) IPS also used Plaintiff's home address and home-office phone number in sales promotions. This enhanced the geographical coverage of the company for prospective clients. IPS would match engagements to its nearest available consultant to minimize the travel costs charged to the client. (*Id.* at ¶ 7.) In order to establish and maintain operations under the virtual office concept, IPS was registered and licensed to do business in a number of states, including Pennsylvania. (*Id.* at ¶ 8.) IPS paid Plaintiff's salary by direct deposit to his Pennsylvania Wachovia Bank account. (*Id.*) IPS also withheld Pennsylvania income tax from

Plaintiff's paychecks and paid Pennsylvania unemployment compensation fund contributions on Plaintiff's behalf, forwarding those monies to the appropriate Pennsylvania state agencies. (*Id.* at ¶ 9.)

By the end of 2001, IPS was unable to meet the stated goals and revenue objectives set forth in Phelps's financing agreement. (Doc. No. 1 at Ex. B ¶ 10.) On January 1, 2002, Phelps acquired majority ownership in and control of IPS and began making a series of personnel changes. (*Id.* ¶ 12.) Phelps directed Defendant Sam Stevens, a California resident, to remove Plaintiff as CFO and to reassign him to the position of Eastern Regional Manager of IPS. (*Id.* ¶¶ 12-13.) Shortly thereafter, Kern resigned as CEO and President of IPS, but continued to serve on its Board of Directors. (*Id.* ¶ 12.) Following Kern's resignation, Stevens was named CEO and President of IPS and served as Phelps's point-man for IPS's day-to-day operations. (*Id.*)

Plaintiff's reassignment to Eastern Regional Manager did not last long. On January 25, 2002, Stevens and IPS's then-CFO, Dennis Polk, called Plaintiff at his home and fired him. (*Id.* ¶ 15.) Plaintiff responded by informing Stevens and Polk of his one-year severance package. (*Id.*) Stevens denied the existence of the severance agreement and offered Plaintiff ten weeks of severance pay, which Plaintiff rejected. (*Id.*) Shortly thereafter, Kern, still serving as an IPS Board member, informed Phelps and Stevens of the agreement and encouraged them to honor it. (*Id.*) They refused. (*Id.* ¶ 16.)

On September 23, 2004, Plaintiff instituted the instant action against Phelps and Stevens in their individual capacities in the Court of Common Pleas of Delaware County by filing a Praecipe for Writ of Summons. (Doc. No. 1 at Ex. A.) More than a year later, Plaintiff filed a Complaint in the same court alleging claims of (1) violation of the Pennsylvania Wage Payment

and Collection Law, (2) breach of contract, and (3) detrimental reliance. (*Id.* at Ex. B.) On October 25, 2005, Defendants filed a Notice of Removal with this Court pursuant to 28 U.S.C. §§ 1441 and 1446, claiming that this Court has original jurisdiction over this matter because complete diversity exists between the parties and the amount in controversy exceeded $75,000. (Doc. No. 1.) Those facts are undisputed. Plaintiff is a resident of Pennsylvania, Phelps and Stevens are residents of Virginia and California, respectively, and Plaintiff's claims exceed $75,000. Defendants filed the instant Motion, asking the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue. (Doc. No. 2.)

## II.     LEGAL DISCUSSION

### A.     Personal Jurisdiction

Federal Rule of Civil Procedure 4(e) permits a district court to assert personal jurisdiction over a non-resident to the extent allowed under the law of the state where the court sits. *Remick v. Manfredy,* 238 F.3d 248, 255 (3d Cir. 2001) (citing *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998)). Under Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. § 5322(b), Pennsylvania courts may "'exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.'" *Remick,* 238 F.3d at 255 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992)). When a plaintiff asserts specific personal jurisdiction over a defendant, as in this case, due process requires that the defendant have "minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.'" *Pennzoil,* 149 F.3d at 201 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444

U.S. 286, 297 (1980)). The required "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.,* 480 U.S. 102, 109 (1987) (O'Connor, J., plurality opinion) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Assuming minimum contacts have been established, the court must next inquire as to whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945)).[1]

The Third Circuit has adopted a "highly realistic" approach to analyzing minimum contacts. Under this approach, "a court is required to make an independent factual assessment of a defendant's contacts with the forum when deciding whether it possesses jurisdiction over that defendant. Each case must be judged on its particular facts." *Mellon Bank*, 960 F.2d at 1124 (citing *Burger King*, 471 U.S. at 485)). "A contract alone is not sufficient to establish minimum contacts. Instead, a court must evaluate prior negotiations; the terms of the contract; and the parties' actual course of dealing." *Pulse Techs., Inc. v. Dodrill*, Civ. A. No. 06-4549, 2006 WL

---

[1] "The plaintiff may not rest on the bare pleadings, but rather must establish these jurisdictional facts by sworn affidavit, deposition, or other competent evidence." *Thypin Steel Co. v. Murmansk Shipping Co.,* Civ. A. No. 96-1799, 1997 U.S. Dist. LEXIS 4454, at *5 (E.D. Pa. Apr. 3, 1997) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66 n.9 (3d Cir. 1984)). Any factual disputes should be resolved in favor of the plaintiff. *Western Equities, Ltd. v. Hanseatic, Ltd.,* 956 F. Supp. 1232, 1238 (E.D. Pa. 1997). "This burden both distinguishes a Rule 12(b)(2) motion from other motions to dismiss and engenders a particular procedural posture: If the court neither conducts an evidentiary hearing nor permits limited discovery to determine personal jurisdiction, the plaintiff 'need make only a prima facie showing of jurisdiction through its affidavits and supporting materials.'" *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 992 (E.D. Pa. 2003) (quoting *Kishi Int'l v. Allstates Textile Mach., Inc.*, No. 96-6110, 1997 WL 186324, at *2 (E.D. Pa. April 11, 1997)).

3589028, at *3 (E.D. Pa. Dec. 7, 2006) (internal citations omitted). Further, a defendant's "physical presence in the forum is always a relevant indicator of minimum contacts," but a lack of physical connection with the forum is not outcome determinative. *Id.* (citing *Mellon Bank,* 960 F.2d at 1225). "Telephone, facsimile, and e-mail communications sent by the defendant into the forum state may count toward minimum contacts." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.* 988 F.2d 476, 482 (3d Cir. 1993) (finding specific personal jurisdiction appropriate where defendant directed twelve communications into the forum and contemplated entering into a contractual relationship that would create significant ties with the forum); *Schnader, Harrison, Segal & Lewis, L.L.P. v. Basic Capital Funds, Inc.,* No.99-4655, 2000 U.S. Dist. LEXIS 13501 at *7-8 (E.D. Pa. Sept. 21, 2000) (finding that plaintiff established minimum contacts for personal jurisdiction through a number of telephone, mail, facsimile and electronic communications).

Defendants argue that personal jurisdiction is improper because they are protected by the "corporate shield" doctrine.[2] "The corporate shield doctrine protects officers and directors by limiting the extent to which their actions performed in the corporate capacity may be used to exercise jurisdiction over them individually." *Lautman v. Loewen Group, Inc.*, Civ. A. No. 99-75, 2000 WL 772818, at *5 (E.D. Pa. June 15, 2000) (citing *Maleski v. DP Realty Trust,* 653 A.2d 54, 62-63 (Pa. Commw. Ct. 1995); *Sneberger v. BTI Americas, Inc.,* No. 98-932, 1998 WL 826992, at *3 (E.D. Pa. Nov. 30, 1998); *PSC Prof'l Servs. Group, Inc. v. Am. Digital Sys., Inc.,*

---

[2] The Defendants' Motion did not specifically mention the "corporate shield" doctrine. (Doc. No. 2.) In his response to Defendants' Motion, Plaintiff's Counsel pointed out that although Defendants' arguments were not "couched" as such, they appeared to be based on the "corporate shield" doctrine. (Doc. No. 5 at 12.) Defendants responded by asserting that the "corporate shield" doctrine was applicable to this case. (Doc. No. 7 at 5.)

555 F. Supp. 788, 793 (E.D. Pa. 1983).  The "corporate shield" doctrine evolved to address concerns about forcing officers and directors either to "disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum," *PSC Prof'l Servs. Group*, 555 F. Supp. at 793, but its protections are not absolute, *Fyk v. Roth*, No. 94-3826, 1995 WL 57487, at *2 (E.D. Pa. Feb. 10, 1995).  The courts have carved out two exceptions to the "corporate shield" doctrine, refusing to allow a corporate officer to invoke its protections where the officer was involved in tortious conduct for which he or she could be held personally liable, *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 676 (E.D. Pa. 1997), or when a corporate officer "has been charged with violating a statutory scheme that provides for personal, as well as corporate, liability," *Lautman*, 2000 WL 772818, at *5 (citing *Huth v. Hillsboro Ins. Mgmt.*, 72 F. Supp. 2d 506, 511 (E.D. Pa. 1999)).

In this case, Plaintiff has alleged, among other claims, violation of the Pennsylvania Wage Payment and Collection Law ("PWCL"), 43 P.S. § 260 *et seq.*, which provides for individual liability of officers and directors as well as for corporate liability.  *See* 43 P.S. §§ 260.2a-260.3.  Thus, it may be appropriate to consider the corporate contacts of these Defendants in determining the question of jurisdiction.  *Lautman*, 2000 WL 772818, at *6 (refusing to invoke "corporate shield" doctrine where Plaintiff alleged violations of PWCL for breach of oral employment contract).  In making the determination of whether corporate contacts are relevant, the following factors should be considered:  (1) "the defendant's role in the corporate structure," (2) "the nature and quality of the defendant's forum contacts," and (3) "the extent and nature of the defendant's personal participation in the [allegedly wrongful] conduct."  *Rittenhouse & Lee*

*v. Dollars & Sense, Inc.,* C.A. No. 83-5996, 1987 WL 9665 at *4 n.6 (E.D. Pa. April 15, 1997).[3]

Both Phelps and Stevens are "high ranking corporate officials with a significant level of authority." *See Lautman*, 2000 WL 772818, at *6. Phelps was the majority shareholder of IPS and had control over the Company from January 1, 2002 onward, while Stevens served as its President and CEO. Although Defendants had no physical contact with the forum, their communications with Plaintiff at his home office were not "random, fortuitous, or attenuated," *Burger King*, 471 U.S. at 475-76, nor were they merely "informational." *Toys "R" Us, Inc. v. Two Step, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003). Plaintiff's employment with IPS changed significantly when Phelps obtained majority control of the Company at the end of 2001. Shortly after obtaining control, Phelps ordered Stevens to remove Plaintiff as CFO and to reassign him to the position of Eastern Regional Branch Manager. To help orchestrate this change, Phelps called Plaintiff twice at his home to arrange business meetings at Phelps's home in Virginia. Stevens, acting as Phelps's "point man" at IPS, was in constant contact with Plaintiff at home via phone calls and fax throughout Plaintiff's employment. On January 26, 2002, Stevens called Plaintiff at home and carried out Phelps's orders to fire Plaintiff. When Plaintiff requested that IPS honor his one-year severance package, Stevens offered him a ten-week severance package and prodded him by phone and in writing to accept the package.

Defendants' contacts in Pennsylvania were numerous, they were aimed directly at Plaintiff, and they were related entirely to Plaintiff's employment with IPS. Defendants were

---

[3] S*ee also Elbeco Inc.,* 989 F. Supp. at 676 (applying the three factors from *Rittenhouse & Lee* in determining whether to consider the defendant's corporate contacts with the forum); *Royal Gist-Brocades N.V. v. Sierra Prods. Ltd.,* No. 97-1147, 1997 WL 792905, at *6 (E.D. Pa. Dec. 22, 1997) (same); *Beistle Co. v. Party U.S.A.,* 914 F. Supp. 92, 96 (M.D. Pa. 1996) (same); *Fyk,* 1995 WL 57487, at *2 (same).

fully aware that Plaintiff spent significant time at his office in Pennsylvania.  In fact, IPS paid for that office and the office supplies.  Defendants frequently reached out to Plaintiff at his Pennsylvania office by telephone, fax, and mail to discuss both general business matters and his future employment with the Company.  They paid Plaintiff by direct deposit in his Pennsylvania bank account and registered IPS to do business in Pennsylvania.  Defendants argue that we should exclude any phone calls from our analysis because they were placed to Plaintiff's California office line and then rerouted to his home office line through IPS's switchboard.  (Doc. No. 2 at Ex. A ¶ 10; Ex. B ¶ 10.)  We reject this argument.  Even if Defendants' calls were rerouted, Plaintiff received the calls in Pennsylvania.  Defendants' communications with Plaintiff demonstrate a "deliberate" attempt to conduct business with Plaintiff in Pennsylvania. *Burger King*, 471 U.S. at 476.  Finally, both Phelps and Stevens were "directly and personally involved in the commission of the allegedly wrongful conduct . . . and because [they] had some contact with Pennsylvania . . . [they] are not entitled to the benefit of the corporate shield." *Lautman*, 2000 WL 772818, at *8.   Under the circumstances, Defendants are not entitled to the protection of the corporate shell doctrine.

By their frequent contacts and communications with Plaintiff in Pennsylvania, Defendants "manifestly availed themselves of the privilege of conducting business [here]."  *Id.* Through their association with Plaintiff, Defendants enjoyed "the benefits and protections" of Pennsylvania's laws.  *Id.* Therefore, "it is presumptively not unreasonable to require [them] to submit to the burdens of litigation in [this] forum."  *Id.*  We conclude that Defendants had sufficient minimum contacts with the forum state to satisfy the jurisdictional requirements of due process.

Addressing next the question of whether the exercise of personal jurisdiction over these Defendants comports with "fair play and substantial justice," Burger King, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320), we must weigh several factors including the burden on the defendant in defending an action in this forum, the interest of the forum state, and the plaintiff's interest in obtaining relief.  *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir. 1990). Defendants bear the burden of showing that jurisdiction is unreasonable.  *Mellon Bank*, 960 F.2d at 1227.

Defendants claim that the geographical distance between Pennsylvania and their home states of Virginia and Washington, respectively, renders this suit unreasonable.  We disagree.  These factors are present almost any time a person is forced to defend a lawsuit outside of his own state.  IPS created a complex "virtual office" system that permitted its officers and employees to conduct business from "virtually" anywhere.  If Defendants did not wish to defend a lawsuit in Pennsylvania, they should not have permitted Plaintiff to have his office in Pennsylvania, requiring constant communication with him in this state.  For these reasons, we conclude that personal jurisdiction over Defendants is proper under Pennsylvania's long-arm statute.  Defendant's Motion to dismiss under Rule 12(b)(2) will be denied.

      **B.**    **Improper Venue**

Defendants also move to dismiss this action under Rule 12(b)(3) for improper venue. "Analysis of any motion to dismiss or transfer for venue purposes must begin with acknowledgment of the well-settled principles that a plaintiff's choice of forum is not to be lightly disturbed and that the burden of establishing the need for transfer rests with the movant." *Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451, 454-55 (E.D. Pa. 2003) (citing *Jumara v. State*

*Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970).

Initially, we note that Defendants have based their improper venue argument on the wrong statutory provision.  Defendants rely on 28 U.S.C. § 1391(a), which states:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  Section 1391(a) governs venue issues only for diversity cases originally filed in federal district court.  It does not apply to actions removed from state court.  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 72 (2d Cir. 1998) (citing *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953) (holding that "the removal statute [28 U.S.C. § 1441(a)] and not the ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in removed cases").  Venue in a removal action is governed by 28 U.S.C. § 1441(a).  Section 1441(a) provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Under this provision, "a party may challenge removal as itself improper, or having been made to the wrong district court if the case was removed to a district court other than that 'embracing' the state court in which the action was brought, but one may not challenge venue in the district court as of right, according to that district court's venue rules, as if the case

had originally been brought there." *PT United Can Co.,* 138 F.3d at 72 (citing *Polizzi,* 345 U.S. at 665-66; *see also Kerobo v. Sw. Clean Fuels Corp.*, 285 F.3d 531, 534 (6th Cir. 2002) ("Venue in removed cases is governed solely by § 1441(a)."). Plaintiff filed his action in the Court of Common Pleas of Delaware County. The Eastern District of Pennsylvania is "the district court . . . for the district and division embracing the place where the state court action was pending." 28 U.S.C. § 1441(a). Therefore, this Court is the proper venue for this action under § 1441(a).

    An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM S. JOHNSON : | |
| : | CIVIL ACTION |
| v.          : | |
| : | NO. O5-cv-5555 |
| EDWIN L. PHELPS, and : | |
| SAM S. STEVENS : | |

**ORDER**

AND NOW, this 30th day of March 2007, upon consideration of Defendants' Motion To Dismiss Against Plaintiff William S. Johnson (Doc. No. 2), and all documents filed in support thereof and in opposition thereto, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge